AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

**FILED**
JUL 0 1 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

one iPhone; IMEI: 354857093826167

Case No. **19MJ2738**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952, 960 | Importation of a Controlled Substance; |

The application is based on these facts:

See attached Affidavit of Special Agent Monica Nelson

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Monica Nelson, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/28/19

*Judge's signature*

City and state: San Diego, CA

Hon. Barbara L. Major
*Printed name and title*

## **ATTACHMENT A-1**

## PROPERTY TO BE SEARCHED

One iPhone; IMEI# 354857093826167;

("TARGET DEVICE #1")

currently in the possession of the Department of Homeland Security, Homeland Security Investigations, 880 Front Street, Suite 3200, San Diego, CA 92101 (Seized Property Vault).

## ATTACHMENT B-1
ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of February 1, 2019, up to and including April 11, 2019.

   a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance from Mexico into the United States, or possess and/or transport with the intent to distribute federally controlled substances within the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

   d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substance within the United States, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.

# AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH WARRANTS

I, Monica Nelson, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I make this affidavit in support of an applications for search warrants in furtherance of a narcotics smuggling investigation conducted by Department of Homeland Security, Homeland Security Investigations Special Agents for the following electronic devices (collectively **Target Devices**):

   a. one iPhone; IMEI: 354857093826167 ("TARGET DEVICE #1"), described in Attachment A-1 (incorporated herein by reference);
   b. One Samsung, Model: SM-G355M UD; IMEI# 353121062749988; ("TARGET DEVICE #2"), described in Attachment A-2 (incorporated herein by reference);
   c. One LG cellular phone; IMEI: 355380091640877; ("TARGET DEVICE #3"), described in Attachment A-3 (incorporated herein by reference);
   d. One SIM card: 89148000003675665306; ("TARGET DEVICE #4"), described in Attachment A-4 (incorporated herein by reference);
   e. One T-Mobile SIM card: 8901260153735198353; ("TARGET DEVICE #5"), described in Attachment A-5 (incorporated herein by reference);
   f. One Telcel SIM card: 8952020018610435390F; ("TARGET DEVICE #6"), described in Attachment A-6 (incorporated herein by reference);
   g. One Telcel SIM card: 8952020518210592441F; ("TARGET DEVICE #7"), described in Attachment A-7 (incorporated herein by reference);

which were seized by Customs and Border Protection Officers ("CBPOs") from Yesenia Jazmin COLIN ("COLIN") incident to her arrest for importation of methamphetamine on April 11, 2019.

2. The **Target Devices** are currently in the possession of Homeland Security Investigations (HSI) at 880 Front Street, San Diego, California, 92101, within the Southern District of California.

3. I seek authority to search the **Target Devices** for evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952 and 960, as described in Attachments B-1 through B-7 (incorporated herein by reference) for the time period from February 1, 2019, through April 11, 2019.

4. The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

### EXPERIENCE AND TRAINING

5. I am a Special Agent currently employed with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) and have been so employed since January 2007. I am currently assigned to the Joint Task Force-West in San Diego, California. At the time of the arrest, I was assigned to a contraband smuggling group that focused on criminal violations including narcotics smuggling.

6. I am a graduate of the Criminal Investigator Training Program and Immigration and Customs Enforcement, Special Agent Training Program at the Federal Law Enforcement Training Center. I have received training in investigating various controlled substances, including the importation of controlled substances and controlled substance trafficking. I have spoken with other agents with extensive experience in controlled substances investigations. I have conducted investigations of criminal violations relating to the smuggling and transportation of controlled substances. I have

participated in the arrests of several persons for controlled substance violations. I have interviewed and assisted in interviews with the arrested persons and with their associates. Through these interviews, I have gained a working knowledge and insight into the typical workings of controlled substance traffickers and smugglers.

7. In the course of my duties, I have worked as the case agent, directed specific drug-related investigations, and interviewed defendants and witnesses relative to the illegal trafficking of controlled substances. Through my observations and these interviews, I gained knowledge and insight into the normal operational habits of narcotics smugglers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico through the Southern California ports of entry.

8. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug smugglers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c. Drug smugglers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d. Drug smugglers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

    e. Drug smugglers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

    f. Drug smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

9. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

a. tending to indicate efforts to import methamphetamine, or some other controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

4

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

10. The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews; my review of documents related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; conversations with other agents experienced in controlled substance investigations, and information gained through my training and experience. All the dates, times, and amounts listed in this affidavit are approximate. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for search warrants, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## FACTS SUPPORTING PROBABLE CAUSE

11. On April 11, 2019, at approximately 6:51 p.m., a Customs and Border Protection Officer ("CBPO") E. Drivdahl assigned to the San Ysidro Port of Entry ("POE") was conducting vehicle canine operations with his canine when the canine alerted to the rear area of a vehicle waiting in line to enter the United States from Mexico. The vehicle was a blue Mazda CX-7 bearing California license plate 7VKD997 ("the vehicle") driven by a lone female identified as Yesenia Jazmin COLIN. CBPO Drivdahl instructed COLIN to stop and turn off the vehicle, which she did. CBPO Drivdahl then requested assistance from AT-CET.

12. CBPO S. Garcia assigned to the San Ysidro POE AT-CET responded and was advised that the canine had alerted to the vehicle driven by COLIN. CBPO Garcia took two negative declarations from COLIN. COLIN stated she was returning home to San Diego from Tijuana, Mexico.

13. At approximately 6:58 p.m., CBPO A. Sanchez assigned as the Z-Portal operator screened the vehicle, and noticed anomalies inside both rear doors, both rear fenders, and the spare tire. The CBPO notified other officers of his findings.

14. CBPO M. Lopez-Portillo was working in the secondary lot at the San Ysidro POE when she was assigned to inspect the vehicle driven by COLIN. During the secondary inspection CBPO M. Lopez-Portillo initially found approximately 43 cellophane wrapped packages in the rear quarter panels. The packages were hard and crunchy with markings of "3" and "5." A sample taken from the packages found in the rear quarter panel using the GEMINI instrument tested positive for the properties of methamphetamine.

15. CBPO M. Lopez-Portillo continued her inspection of the vehicle, finding an additional 14 cellophane wrapped packages in the spare tire, 10 cellophane wrapped packages in the rear passenger doors, and eight cellophane wrapped packages in the center console.

16. In total, the CBPO removed 75 packages from the vehicle, with a total net weight of approximately 36.16 kilograms (79.71 pounds). The methamphetamine, vehicle, three cellular phones and four SIM cards, and miscellaneous documents were seized and recorded on Department of Homeland Security Form 6051S seizure number 2019250400111601, line numbers 001 through 004 respectively.

17. Officers placed COLIN under arrest for violating Title 21 United States Code, Sections 952 and 960, Unlawful Importation of a Controlled Substance. COLIN was charged with importation of a controlled substance (methamphetamine) in violation of Title 21, United States Code sections 952 and 960 in the Southern District of California in case number 19-CR-1637-LAB. A trial in this case is set for July 30, 2019, in front of the Honorable Larry Alan Burns.

18. On April 12, 2019, at approximately 11:49 p.m., CBPO J. Sanders assigned as the Z-Portal operator was requested to screen the vehicle. The vehicle was driven through the Z-Portal and the CBPO observed anomalies in the rear quarter panels. The CBPO approached the vehicle and inspected the rear quarter panel on the passenger side

from inside the vehicle. CBPO Sanders discovered a clear wrapped package inside the quarter panel wedged above the passenger side brake light. The CBPO also discovered clear wrapped packages underneath the center console. The CBPO informed the secondary lot supervisor of his findings.

19. On April 13, 2019, at approximately 12:30 a.m., CBPO Lopez-Portillo was advised that the Z-Portal operator found anomalies in the rear quarter panels above the brake lights of the vehicle. CBPO Lopez-Portillo conducted a subsequent inspection and found a total of seven (7) additional packages. A sample was taken of the packages found using the GEMINI instrument, which tested positive for the properties of methamphetamine. The seven packages had a net weight of approximately 3.38 kilograms (7.45 pounds).

20. On April 12, 2019, at approximately 12:45 a.m., COLIN was interviewed and advised of her Miranda rights. COLIN waived her constitutional rights to counsel and elected to make a statement.

21. COLIN told the Special Agents she purchased the Mazda she was driving in January 2019 from a dealership in Tijuana, Mexico. COLIN stated she found the vehicle through a magazine and paid $3000 U.S. dollars. She claimed that she had never lent the vehicle out to anyone. As far as she knew, there was only one set of keys for the vehicle and they belonged to her. COLIN further stated that aside from parking in lots, while shopping, the vehicle was always parked in her garage at night. COLIN claimed that she lives in Tijuana with her sister Ashley.

22. COLIN initially claimed that the previous night, on April 10, 2019, at approximately 8:30 p.m. – 9:00 p.m., she took her vehicle to a tire shop called Jaramillo near the Cinco y Diez in Tijuana, Mexico. COLIN said she was with her two children and her sister, Ashley. COLIN left her vehicle at the tire shop for approximately 30-45 minutes. Meanwhile, COLIN, Ashley, and Defendant's two children went to a nearby taco shop to eat. While they were at the taco shop, a male individual from the tire shop arrived and ordered one taco, ate the taco there, and then left. COLIN stated she had a weird feeling

like the guy from the tire shop was following them, but she could not explain what made her feel this way. At the end of the interview, COLIN attempted to contact her sister to check on her children. After numerous attempts, COLIN was unable to get ahold of her sister, Ashley. COLIN began to worry and stated that she was afraid something happened to her children.

23. COLIN subsequently told the agents that she started dating her neighbor, approximately eight months ago. About a month into their relationship, he shot her in the arm. COLIN claimed that she healed quickly. According to COLIN, not long after she began dating the neighbor, she noticed that he was involved in drug smuggling. COLIN stated that he threatened the individuals that were working for him. COLIN did not like this and did not want to be with him anymore.

24. According to COLIN, the neighbor put the narcotics in her vehicle on the day of her crossing, April 11, 2019. He picked up her vehicle and then brought it back to her. COLIN stated she was told to come to San Diego, park the vehicle, and then return to Tijuana. Defendant stated she was told she would be given money, but she never received payment. The neighbor told her she had to come to San Diego. He knew where she lived and would find her. COLIN claimed that if she did not come to San Diego, they would kill her and her children. COLIN stated that they knew she was scared and would not leave her children. At approximately 2:50 a.m., COLIN contacted her sister Ashley and was able to confirm that her children were safe at home, sleeping.

25. At the time of her arrest, COLIN had $1,230 in U.S. currency with her. She claimed that the money was hers and she received it from her employment. According to COLIN, she sells clothing and other items in Tijuana. COLIN stated she does not have a bank account and was bringing the money to the United States to give to her sister Esmeralda, to hold for COLIN.

26. COLIN stated she had crossed into the United States on two additional occasions. Colin did not believe she had any drugs in the vehicle at the time as she was sent to secondary and nothing was found.

8

27. California Department of Motor Vehicles documents reveal that the 2007 vehicle involved in the smuggling offense had a valid registration from November 8, 2018, through November 8, 2019. A copy of registration found in the vehicle at the time of COLIN's arrest shows that the vehicle was registered to COLIN on March 4, 2019.

28. A review of the crossing history for the smuggling vehicle indicates that in 2019, the vehicle had 12 prior crossings into the United States before COLIN's arrest on April 11, 2019. COLIN's personal crossing history reveals that she was in the vehicle on each of the dates it crossed into the United States from Mexico. The first time the vehicle crossed into the United States was on March 1, 2019, with COLIN as the driver and sole occupant. COLIN's personal crossing history reveals additional crossings as a pedestrian, as well as crossings in other vehicles in the past year.

29. At the time of her arrest, COLIN had the **Target Devices** on her person and in her property found in the vehicle. COLIN stated that the iPhone was the phone she was currently using. The other phone was her old San Diego phone, and the cracked phone no longer worked.

30. Based upon my experience and investigation in this case, I believe that COLIN, as well as other persons as yet unknown, were involved in an on-going conspiracy to import methamphetamine or some prohibited narcotics. Based on my experience investigating narcotics smugglers, I also believe that COLIN may have used the **Target Devices** to coordinate with co-conspirators regarding the importation and delivery of the methamphetamine, and to otherwise further this conspiracy both inside and outside the United States. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, messages sent via texting applications such as WhatsApp, email messages, messages and posts from social networking sites like Facebook, photographs, videos, and other digital information are stored in the memory of cellular telephones which identify other persons involved in narcotics trafficking activities.

31. Based upon my experience and training, consultation with other law

9

enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of COLIN, and her co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, email messages, text messages, messages from texting applications like WhatsApp, messages and posts from social networking sites like Facebook, photographs, videos, and other digital information are stored in the memory of the cellular telephone described herein. Because the **Target Devices** have been in the custody of HSI since the date of COLIN's arrest, I believe that this information continues to be stored on the **Target Devices**.

32. Drug trafficking conspiracies require intricate planning and coordination. This often occurs days, weeks, or even months prior to the actual importation of the drugs into the United States. Co-conspirators communicate with one another in efforts to ensure success in getting their valuable cargo to its destination within the United States. In this case, evidence supports that probable cause exists to search the **Target Devices** for information dating back to February 1, 2019, approximately one month prior to COLIN's registering the Mazda and first crossing in the vehicle. This is based upon a review of certified DMV records, as well as Defendant's crossing history.

## SEARCH METHODOLOGY

33. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure

environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

34. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

35. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## CONCLUSION

36. Based on all of the facts and circumstances described above, there is probable cause to believe that COLIN used the **Target Devices** to facilitate the offense of importing methamphetamine or other federally-controlled substances. The **Target Devices** were likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence and instrumentalities of violations of Title 21, United States Code, Sections 952 and 960.

37. There is also probable cause exists to believe that evidence and

instrumentalities of illegal activity committed by COLIN continues to exist on the **Target Devices**.

38. Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth in Attachments B-1 through B-7 (incorporated herein) are likely to be found in the property to be searched described in Attachments A-1 through A-7 (incorporated herein). Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with Homeland Security Investigations, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachments A-1 through A-7, and seize the items listed in Attachments B-1 through B-7.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Monica Nelson
Special Agent

Subscribed and sworn to before me this 28 day of June, 2019.

The Honorable Barbara L. Major
United States Magistrate Judge

12